UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JULENE P. CHRISTIE, | Civ. No. 03-2265 (SRC) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**Chesler, District Judge**

This matter comes before the Court upon appeal of Plaintiff, Julene P. Christie, of the final decision of the Commissioner of Social Security ("Commissioner") determining that she is not eligible for Social Security Disability Benefits under Section 223 of the Social Security Act ("Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g), and having considered the submissions of the parties without oral argument pursuant to L. Civ. R. 9.1(b), grants the Plaintiff's appeal and remands the case for further proceedings consistent with the Court's opinion.

**I. BACKGROUND**

**A. Procedural Background**

Plaintiff filed this appeal with the Clerk's Office of this Court on May 16, 2003. Plaintiff challenges the Commissioner's determination that she is not disabled and thus ineligible for Disability Insurance Benefits ("disability benefits"). Plaintiff filed the present application for disability benefits on April 30, 1995. (R. at 292-295). She asserted disability due to asthma, heart

1

problems, reading problems, emotional problems and obesity, (R. at 296), with an onset date of December 20, 1989, (R. at 292). On July 18, 1995, Plaintiff's application was denied. (R. at 296). Plaintiff filed a request for reconsideration on September 14, 1995, (R. at 301), and her claim was denied on reconsideration on October 19, 1995, (R. at 302-04). Plaintiff then filed a request for a hearing before an Administrative Law Judge ("ALJ") on October 31, 1995.

The ALJ, Judge Gerald J. Spitz, dismissed Plaintiff's claim on February 25, 1998, believing that a previous application for disability benefits[1] barred Plaintiff's current claim on res judicata grounds. (R. 496–500). Plaintiff appealed the decision of the ALJ to the Appeals Council on March 9, 1998. (R. at 501-02). On August 27, 2001 the Appeals Council ruled that the introduction of new and material evidence of Plaintiff's mental disorder rendered res judicata inapplicable and therefore vacated the ALJ's dismissal order and remanded the claim to the ALJ for a hearing. (R. at 507-09). A hearing was held on January 15, 2002, at which Plaintiff, represented by counsel, as well as a vocational expert ("VE") appeared and testified. (R. at 35-82).

In a decision issued February 15, 2002, the ALJ found that Plaintiff was not disabled. (R. at 17-24). Plaintiff requested a Review of Hearing Decision on February 28, 2002, (R. at 15-16),

---

[1] The current application for disability benefits is the Plaintiff's fifth. (R. at 738). The ALJ believed the adjudication of the Plaintiff's November 1, 1990 application barred the Plaintiff's current claim. (R. at 498-500)
    The first application was filed on July 29,1985 and claimed disability due to diabetes and arthritis with an onset date of December 2, 1984. The claim was denied at both the initial and reconsideration stages, and the Plaintiff did not request a hearing before an ALJ. (R. at 737).
    The second application was filed on November 1, 1990 and claimed disability due to arthritis with an onset date of December 20, 1989. The claim was denied at the initial and reconsideration stages, and a request for a hearing before an ALJ was made. The ALJ remanded the claim back to the state agency with the instruction that the state agency more fully consider the claimant's mental disorder, however on remand the claim was again denied and no appeal was filed. (R. at 737).
    The Third application was filed on September 10, 1993 and claimed disability due to arthritis with an onset date of August 9, 1993. The claim was denied at the initial and reconsideration stages, and the Plaintiff did not request a hearing before an ALJ. (R. at 737).
    The Fourth application was filed on December 22, 1994 and was dismissed at the initial and reconsideration stages. The claimant did not request a hearing before an ALJ. (R. at 737).

which was denied by the Appeals Council in a decision issued on March 13, 2003. (R. at 10-16). Thereafter, Plaintiff filed the instant action seeking review of the Commissioner's denial of disability benefits. The appeal is fully briefed and before this Court for consideration.

**B.  Standard for Awarding Benefits under the Act**

An individual may not receive disability insurance benefits under the Act unless she first meets statutory insured status requirements. See 42 U.S.C. § 423. In order for a claimant to be considered disabled, she must first demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1)(A). Thus, a claimant is not disabled unless her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423 (d)(2)(A).

To demonstrate that a disability exists, a claimant must present evidence that her affliction "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). Although the ALJ must give the plaintiff's subjective complaints "serious consideration," those complaints alone are not enough to satisfy this threshold for establishing a disability. See Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002). Furthermore, the claimant bears the burden of proving the existence of the alleged disability. 42 U.S.C. § 423 (d)(5)(A).

3

After establishing that a claimant has met the threshold eligibility requirements, the ALJ must undertake a five-step evaluation process in order to review a claim for disability insurance benefits. See 20 C.F.R. § 404.1520; see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987). In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a). If the claimant is working and the work is substantial gainful activity, the application for disability benefits is automatically denied. See 20 C.F.R. § 404.1520(b). If the claimant is not employed, the ALJ proceeds to step two and determines whether the claimant has a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(c).

A claimant who does not have a "severe impairment" is not disabled.  Id.  An impairment is not severe if it does not significantly limit a claimant's physical or mental capacity to perform basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a); see Yuckert, 482 U.S. at 146. Basic work activities relate to the ability to perform most jobs and the physical functions that most jobs require. See 20 C.F.R. §§ 404.1521(b); 416.921(b)(1). It is not enough for a plaintiff to show that she had certain impairments; rather, those impairments must result in functional limitations that preclude work activity. 42 U.S.C. § 423(d)(2)(A).

If the impairment is found to be severe, the ALJ moves to step three to determine whether the impairment, or combined impairments, meets or is equal to those impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"). If so, the claimant is conclusively presumed to be disabled, and the evaluation ends. See 20 C.F.R. § 404.1520(d). If the impairment does not meet or equal a listed impairment under the Listing, the ALJ proceeds to step four, which requires a determination whether the limits imposed by claimant's impairment ("Residual Functional Capacity" or "RFC") prevent the claimant from returning to the work that

claimant performed in the past ("Past Relevant Work"). See 20 C.F.R. § 404.1520(e). If the claimant is found capable of performing her past relevant work, the claimant is not disabled. Id. If the claimant is no longer able to perform her past relevant work, the evaluation must continue to step five.

The fifth and final step in the evaluation requires a determination of whether the claimant is capable of performing some other work available in the national economy. In this last step, the burden shifts to the Commissioner to demonstrate that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 2000) (citing 20 C.F.R. § 404.1520(f)).  Benefits are denied if work in which claimant could engage exists in the national economy. Thus, entitlement to benefits is dependent upon a finding that the claimant is incapable of performing past relevant work or some other type of work in the national economy because of the impairments present.

**C. Statement of the Facts**

At her hearing before the ALJ, Plaintiff testified that she was 54 years old, married, and a mother of six children. (R. at 48-49). She has an eighth grade education, and testified that she was placed into special education classes for math and reading. (R. at 50-51). Her past work experience includes work as a cashier, stock person and bus driver for senior citizens. (R. at 52, 54, 55, 61, 62). She testified that she has been fired from cashier jobs a number of times because of her inability to add, subtract and generally keep proper account of the money. (R. at 52, 54, 56, 57, 61). She held a cashier/stock person job at a truck stop for 16-18 months, during which

5

she complained of knee pain, but quit after her boss accused her of stealing. (R. 55-58). She was asked to leave her job as a bus driver after arthritis and pain in her leg prevented her from being able to get into and out of the bus. (R. 62-63). She testified that stiffness and pain in her knee, as well as her tendency to "lose interest" in the performance of duties, would have prevented her from being able to maintain a cashier job prior to her last date insured. (R. at 69).

In addition to Plaintiff's proffered testimony, the record contains additional evidence submitted by Plaintiff in support of her claims of physical and mental disability. Hospital records indicate that Plaintiff, who is 5' 2" tall, weighed between 300 and 320 lbs. prior to her last date insured. (R. 368-69). She was diagnosed in 1985 with mild to moderate osteoarthritis of the lumbosacral spine and both knees, however the doctor noted no gross limitation of movement in either the back or the spine. (R. at 161). An x-ray examination from 1985 found no evidence of degenerative change involving the left knee, but "very early" and "very minimal" degenerative change in the right knee. (R. 163).

**D. ALJ's Decision**

In order to determine whether Plaintiff was disabled prior to her last date insured, December 31, 1989, the ALJ employed a five-step evaluation pursuant to 20 CFR § 404.1520. (R. at 21). The ALJ determined that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date, and thus passed step one. (R. at 21). He also found that the Plaintiff's low intellectual functioning and obesity were severe enough to pass step two of the evaluation. (R. at 22). At step three, however, the ALJ opined that Plaintiff's medially severe impairments were not enough to meet or medically equal one of the impairments in the Listing, and that she was therefore not entitled to a presumption of disability without further inquiry. (R.

at 22). The ALJ evaluated Plaintiff's low intellectual functioning under Listing 12.05 and determined that because her Performance, Verbal and Full scale IQ scores were not of 70 or below and because she had not evinced dependence upon others for personal needs, she was not entitled to a presumption of disability under Listing 12.05. (R. at 22).

For purposes of steps four and five, the ALJ determined that the Plaintiff had the residual functional capacity "to perform a wide range of low-entry, light work". (R. at 23). In so determining, the ALJ notes that the Plaintiff was able to perform fairly complex work during the crucial period: she worked as a cashier, kept records, helped customers, performed daily household maintenance duties, maintained social contacts and drove. (R. at 22) Although the Plaintiff complained that she is too slow to perform cashier work, the ALJ pointed to the fact that she held a cashier job for 16-18 months and only quit because her boss accused her of stealing. (R. at 22). He also noted that her morbid obesity did not preclude her from working during the critical period, and that her subjective complaints concerning her ability to work were not "fully credible." (R. at 23).

The ALJ then determined that in light of her residual functional capacity, and the VE's testimony that the Plaintiff's prior work as a cashier was performed at the "medium to light level", the Plaintiff could have returned to her previous job as a cashier during the critical period, and was thus not disabled. (R. at 23). Alternately, the judge determined that even if she could not have returned to her previous job, there was other work in the sedentary base of employment that she could have performed. (R. at 23). He based his determination on VE testimony that the Plaintiff could perform sedentary jobs and on the Vocational-Guidelines, which indicate that a claimant such as Plaintiff (a younger individual, with limited education and low-entry work experience) can perform sedentary work in the national economy. (R. at 23).

## II. Discussion

Plaintiff argues that the ALJ erred because: 1) at step three, he failed to determine whether her obesity was of listing level severity; 2) at step four, he inaccurately determined that she could return to her past relevant work, which, plaintiff asserts, was beyond her residual functional capacity; 3) at step five he failed to obtain Vocational Expert Testimony as to whether jobs are available in the national economy for a claimant with Plaintiff's non-exertional limitations; and 4) he improperly discounted Plaintiff's credibility. We address each argument in turn.

1) The ALJ's Failure to Consider Plaintiff's Obesity under Listing 9.09

Plaintiff argues that the ALJ erred at step three of the five step evaluation by failing to consider whether her obesity was of listing level severity. Although the obesity listing (20 C.F.R. Part 404, Subpart P, Appendix 1, §9.09) was deleted effective October 25, 1999, Plaintiff argues that because her eligibility for disability benefits was first determined prior to the deletion of the obesity listing, it should still be used to determine whether she is disabled. With no controlling Third Circuit precedent on point, Plaintiff cites to a number of cases in other jurisdictions which have held that Listing 9.09 must be applied to claims pending as of October 25, 1999. In response, Defendant cites to a number of cases from other jurisdictions which have held the opposite. After reviewing the record and the relevant case law, this Court has determined for the reasons discussed below that Listing 9.09 should indeed be used to evaluate Plaintiff's claim.

*a. The deletion of Listing 9.09*

The Social Security Administration ("SSA") has promulgated a listing of

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 that are considered severe enough to prevent an adult from doing any gainful activity. 20 C.F.R. § 416.925(a). If a claimant has an impairment that meets or equals one of the Listings, he is presumed disabled at step three of the five-step evaluation. 20 CFR § 404.1520. Listing 9.09 recognized obesity as such an impairment, and provided in pertinent part that a claimant is presumed disabled if he meets the following criteria:

> 9.09 Obesity. Weight equal to or greater than the values specified in Table I for males, Table II for females (100 percent above desired levels) and one of the following:
> A) History of pain and limitation of motion in any weight-bearing joint or the lumbrosacral (on physical examination) associated with findings on medically acceptable imaging techniques of arthritis in the affected joint or lumbrosacral spine; or
> . . .

20 C.F.R. Part 404, Subpart P, Appx. 1, § 9.09 (1996).

On August 24, 1999, the SSA issued the Revised Medical Criteria for Determination of Disability, Endocrine and Related Criteria, which deleted § 9.09 effective October 25, 1999. Revised Medical Criteria for Determination of Disability, Endocrine and Related Criteria, 64 Fed. Reg. 46122-01 (Aug. 24, 1999) (to be codified at 20 C.F.R. pt. 404). Explaining the deletion, the SSA stated that "in our experience, its [Listing 9.09] criteria were not appropriate indicators of listing level severity because they did not represent the degree of functional limitation that would prevent an individual from being gainfully employed". Id. at 46124. Specifically they noted that the listing indicated neither a requisite degree of pain nor a requisite degree of motion limitation, and thus the listing could be satisfied with only "minimal additional findings over and above the specified weight levels". Id. Although obesity is no longer an independent listing level impairment, the new obesity regulations consider the effects of obesity on the musculoskeletal, respiratory and cardiovascular systems in disability determinations. Id.

at 46122. The Revised Medical Criteria also indicate that the deletion would have "only a prospective effect" and that previously decided cases would not be readjudicated. Id. at 46127.

The Revised Medial Criteria are silent on their face as to whether Listing 9.09 or the new obesity requirements are to be applied to claims filed prior to the October 25, 1999 deletion but still pending final determination as of October 25, 1999.  In Social Security Rulings 00-03 p and 02-01 p, however, the SSA made clear its intention to use the new obesity regulations and not Listing 9.09 to evaluate claims that were filed before October 25th 1999 but that were "awaiting an initial determination or that were pending appeal at any level of the administrative review process or that had been appealed to court" as of October 25th 1999. Social Security Ruling, SSR 02-01 p; Titles II and XVI: Evaluation of Obesity, 67 Fed.Reg. 57,859 (2002), and Social Security Ruling, SSR 00-03 p; Titles II and XVI: Evaluation of Obesity, 65 Fed.Reg. 31,039, 31,042 (2000) (superseded by SSR 02-01 p).

   *b. Application of the new obesity regulations to claims pending at the time of revision*

The key question before the Court is whether the new obesity regulations rather than Listing 9.09 are to be applied to claims pending as of the October 25, 1999 deletion of Listing 9.09, as SSR 02-01 p would require. Clearly, if the new obesity guidelines - which lack Listing 9.09 - apply to Plaintiff's claim, then the ALJ was not in error when he failed to evaluate Plaintiff's claim under Listing 9.09. To determine whether applying the revised regulations as SSR 02-01 p requires would constitute impermissible retroactive application of a rule, two questions must be answered: 1) would applying the new guidelines to pending claims work a retroactive effect and, if so, 2) does the administrative agency have the authority to promulgate rules with a retroactive effect. See Portlock v. Barnhart, 208 F.Supp.2d 451 (D.Del. 2002) (determining first whether applying the new regulations to pending claims would constitute

10

retroactive rulemaking, and second whether the SSA has the requisite congressionally granted authority to promulgate retroactive rules).

In Landgraf v. USI Film Productions., 511 U.S. 244 (1994), the Supreme Court explained that a statute works a retroactive effect when "the new provision attaches new legal consequences to events completed before its enactment", id. at 270, or when its application "would impair rights a party possessed when he acted, increase a party's liability for past conduct or impose new duties with respect to transactions already completed", id. at 280. The presumption against retroactive application is not restricted to cases involving vested rights. Id. at 275 n.29. Although Landgraf addressed the retroactive application of statutes, courts have applied its reasoning to determine whether regulations work a retroactive effect. See, e.g., Covey v. Hollydale Mobilehome Estates, 116 F.3d 830, 838 (9th Cir.1997); Little Co. Mary Hosp. & Health Care Ctrs. v. Shalala, 994 F.Supp. 950, 960 (N.D.Ill.1998); Kokal v. Massanari, 163 F.Supp.2d 1122, 1130 (N.D. Cal. 2001).

In a recent *en banc* opinion, the United States Court of Appeals for the Sixth Circuit applied the principles of Landgraf to analyze whether the application of the revised Social Security regulation on obesity, rather than Listing 9.09, to the plaintiff's claim for social security disability insurance benefits would be retroactive and therefore impermissible. Combs v. Commissioner of Social Security, 459 F.3d 640 (6th Cir. 2006). The case before the Sixth Circuit, Combs v. Commissioner of Social Security, presented a factual scenario similar to the facts of the case at bar. Combs's application for disability benefits, based in part on a claim of obesity, was filed and denied before the regulation change. Id. at 644. During the pendency of Combs's administrative appeal, the SSA deleted Listing 9.09. Id. On remand, the ALJ

11

ultimately determined that Combs's impairments did not meet or medically equal one of the listed impairments. Combs appealed the decision to the district court. Id. at 645.

On appeal to the Sixth Circuit, the court evaluated the question of retroactivity based on the factors articulated in Landgraf - fair notice, reasonable reliance and settled expectations - and concluded that the application of the revised obesity regulation to disability claims pending at the time of the revision did not work a retroactive effect. Id. at 646-47. The court reasoned as follows:

> It can hardly be argued that claimants become obese or otherwise become impaired in reliance on the availability of the presumption in the listing. Nor is there any indication that they file their claims, or decide what to put in their claims, based on how the agency determines whether they meet the statutory requirements for disability eligibility. Similarly, claimants have not settled expectation that the agency will use one as opposed to another algorithm for determining whether the statutory requirements are met. Finally, there is no basis for claimants to argue that they need "fair notice" of a change in the step three presumptions.

Id. at 646.

The Combs court also concluded that the listing change was not impermissibly retroactive with respect to plaintiff Combs based on the distinction between substantive and procedural rule changes, as drawn by the Supreme Court in Landgraf and Republic of Austria v. Altmann, 541 U.S. 677 (2004). Id. at 647. The court reasoned that "changes to procedural rules generally do not have retroactive effect because procedural rules regulate secondary as opposed to primary conduct" whereas "rules that deprive persons of vested substantive rights may have retroactive effects if applied to conduct occurring prior to their enactment." Id. The ourt held that the change impacted the way in which the agency determined a claimant's eligibility for disability, but that it did not alter the criteria or requirements of disability eligibility. Id. It further held that the conduct to which the regulation was directed was the adjudication of a

claimant's application for disability benefits, that is, the ALJ's evaluation of the claim using the five-step process.  Id. at 649.  In contrast, the court noted, the regulatory change did not affect conduct occurring before the statute, such as, for example the onset of the alleged disability or the claimant's filing of her claim.  Id.  Thus, the court concluded that deletion of Listing 9.09 was a procedural rule change, and application of the revised methodology to Combs's claim for benefits did not work an impermissible retroactive effect.  Id.

This Court also takes notice of the competing viewpoint expressed by the United States Court of Appeals for the District of Columbia Circuit in National Mining Association v. Department of Labor, 292 F.3d 849 (D.C. Cir. 2002).  In National Mining, the plaintiffs challenged certain revisions to regulations issued pursuant to the Black Lung Benefits Act, a law providing benefits to coal miners who are totally disabled due to pneumoconiosis, or black lung disease, and to their surviving dependents.  Id. at 853-54.  In relevant part, the court considered the retroactivity of a rule that created a rebuttable presumption that when a miner who is eligible for black lung benefits receives medical treatment for a pulmonary disorder, the disorder is caused or aggravated by the miner's pneumoconiosis, which would make the employer liable for the medial costs of that treatment.  Id. at 865.  The court held that the regulation was retroactive as applied to pending cases, reasoning that the new regulation changed the outcome for cases that had already been filed.  Id.

The reasoning of the National Mining court is not, however, persuasive to this Court's consideration of the retroactivity issue before it.  National Mining appears to base its determination that the regulation change at issue was retroactive on the fact that the change would be outcome-determinative.  As this Court reads Landgraf, whether a rule or statute would affect the outcome of a case is not the standard for determining retroactivity.  The National

13

Mining holding may be understood as supported by the rationale that the rule change increased the employer's liability for past conduct, although the court did not offer this reason in its opinion. That rationale does not apply to the case at bar.

Instead, the Court finds the reasoning and analysis of the Sixth Circuit to be persuasive and on point, and it therefore chooses to follow the holding in Combs. In the present case, Plaintiff did not have a vested right to disability benefits based on a procedural scheme of claim adjudication that was in place when her claim was filed. In other words, Plaintiff did not have a settled expectation of any particular outcome of her claim or a right to expect that her filing for disability benefits based on her claimed obesity would freeze the rules that would be applied to adjudication of the claim. The Court recognizes that, under the revised procedure, Plaintiff must satisfy a greater burden of proof than she would have had to if Listing 9.09 were applied to her claim at step three of the evaluation. A change in the procedural scheme for adjudicating her claim does not, however, affect Plaintiff's substantive rights. Thus, the ALJ's application of the revised criteria in evaluating her claim for disability benefits rather than application of Listing 9.09 did not have a retroactive effect.

Because the Court holds that application of the revised regulations to Plaintiff's claim was not retroactive, it need not address the question of whether the SSA has authority to promulgate rules with retroactive effect.

    c. *ALJ's failure to consider whether Plaintiff's impairments were of listing level severity*

In his February 15, 2002 decision, the ALJ identified that two of Plaintiff's impairments were considered "severe" within the meaning of 20 C.F.R. § 404.1509: low intellectual functioning and obesity. (R. at 22). At step three of his analysis, the ALJ considered whether her low intellectual functioning was of listing-level severity and determined that it was not. (R. at

22). However, without mention of whether Plaintiff's obesity was of listing level severity, the ALJ concluded that "the claimant's medically severe impairments are not enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4." (R. at 22). Defendant argues that this is not remandable error because even if it were appropriate for the ALJ to evaluate Plaintiff's impairments under Listing 9.09, she does not meet the requirements of Listing 9.09 anyway.

Defendant's argument is without merit, because the ALJ failed to set forth the reasons for his decision with respect to Plaintiff's obesity impairment. The ALJ reviewing Christie's claim provided a detailed explanation for why he determined that her low intellectual functioning did not meet or medically equal a listed impairment. (R. at 22.) However, although he identified Plaintiff's obesity as a medically determinable impairment considered severe under the applicable regulations, the ALJ did not discuss any evidence pertaining to her obesity or offer a single reason why he determined that it was not of listing level severity. (Id.)

The Third Circuit has made clear that an ALJ cannot "merely stat[e] a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment, without identifying the relevant listed impairments, discussing the evidence, or explaining his reasoning." Burnett v. Commissioner of Social Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000), *quoting* Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996). Such conclusions are "beyond meaningful judicial review". Id. Additionally, the ALJ "must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition." Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994). The ALJ may accept some parts of the medical evidence and reject others, but he must consider all the evidence and give some reason for discounting the evidence he rejects. Id.

15

In this case, the ALJ failed to discuss any evidence relating to Plaintiff's obesity and explain his reasons for concluding that it was not equivalent in severity to an impairment listed in the current regulations. Accordingly, the case must be remanded, so that the ALJ may make an adequately supported and reasoned finding with regard to his step three determination with regard to Plaintiff's obesity .

2) The ALJ's Determination that Plaintiff Could Have Returned to Her Past Relevant Work During the Critical Period

Plaintiff next argues that the ALJ committed an "obvious mistake of fact" at step four by "failing to recognize that Ms. Christie's past relevant work required physical exertion beyond his own findings as to her RFC." (Pl.'s Brief at 9-10.) Plaintiff points to the seeming contradiction between the ALJ's finding that Plaintiff retained the RFC to perform only "light work," R. at 23, and his finding that she could return to her past relevant work, which he found "was performed at the light to medium level." (R. at 23.) Review of the record and the law, however, reveals that the ALJ did not err when he determined that Plaintiff could return to her past relevant work.

At the hearing, the ALJ solicited the testimony of a VE. He asked her to characterize Plaintiff's past cashiering work "*both* [as] this lady performed it and as it might be performed in the regional and national economy." (R. at 71) (emphasis added). The VE testified that as it might be performed in the national economy, cashing is either light or sedentary. (R. at 75). She also testified, however, that the specific cashiering job that Plaintiff had at the truck stop (which involved stocking duties) was performed at the "light to medium" level.

It appears, then, that although Plaintiff could not have performed her specific past job as a truck stop cashier, as it was beyond her "light work" RFC, she could still perform the work of a

cashier as it commonly exists in the national economy. In order to meet her burden to prove that she could not return to her past relevant work Plaintiff had to prove that she could not return to her previous work as a "cashier", not just her *specific* former job as a "truck stop cashier." Social Security Ruling 82-61 (explaining "a claimant will be found to be "not disabled" when it is determined that he or she retains the RFC to perform . . . [t]he actual functional demands and job duties of a particular past relevant job; *or* . . . of the occupation as generally required by employers throughout the national economy.") (emphasis added). See also Jock v. Harris, 651 F.2d 133, 135 (2d Cir 1981); Pelletier v. Secretary of H.E.W., 525 F.2d 158, 160 (1st Cir. 1975). Because Plaintiff was unable to do this, the ALJ was not in error when he determined that she could return to her past relevant work as a cashier.

3) The ALJ's Failure to Obtain Vocational Expert Testimony at Step Five

Plaintiff's third argument is that the ALJ erred at step five of his evaluation by failing to obtain expert testimony as to whether there are jobs available in the national economy for a claimant with Plaintiff's limitations. At step five of the evaluation, the burden shifts to the Commissioner to demonstrate that there are jobs available in significant numbers in the national economy that a claimant, in light of her impairments and residual functional capacity, is capable of performing. Plummer, 186 F.3d at 428. The burden only shifts to the Commissioner, however, if the claimant has met her burden of demonstrating that she is unable to return to her past relevant work. Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979). As this Court has already determined that Plaintiff has not met this burden at step four, *supra*, we do not reach Plaintiff's argument that the ALJ erred at step five.

17

4) The ALJ's Credibility Determination

Plaintiff's final argument is that the ALJ improperly discounted her credibility. After considering numerous exhibits, medical records and employment histories, the ALJ determined that "[h]er subjective complaints concerning her ability to work during the critical period are not fully credible". (R. at 23). Plaintiff asserts that the ALJ did not present "sufficiently specific" reasons for discounting Plaintiff's credibility. Pl.'s Brief at 18. The Court, however, disagrees. The record contains substantial evidence to support the ALJ's factual finding that Plaintiff's complaints were not fully credible.

It is well settled that an ALJ's decisions regarding questions of fact, like witness credibility, are conclusive before a reviewing court if they are supported by "substantial evidence in the record." 42 U.S.C. § 405 (g); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). An ALJ can evaluate the credibility of claimants and render an independent judgment in light of the medical findings and other evidence. LaCorte v. Brown, 678 F. Supp. 80, 83 (D.N.J. 1988). The ALJ must "give serious consideration to a claimant's subjective assertions of pain, even when those assertions are not fully confirmed by objective medical evidence." Welch v. Heckler, 808 F.2d 264, 270 (3d Cir.1986). The ALJ, however, need not accept without question the credibility of such subjective evidence. Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979). If the ALJ concludes that testimony is not credible, however, the ALJ must indicate the basis for that conclusion in his decision. Cotter v. Harris, 642 F.2d 700, 705-06 (3d Cir.1981). Courts give "great weight and deference" to an ALJ's credibility determinations. Kowalski v. Barnhart, 2004 WL 3406118, at *6 (M.D. Pa. Dec. 17, 2004); see also Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir.1997).

In the present case, the ALJ gave "sufficiently specific" reasons for not crediting Plaintiff's testimony concerning her ability to work. Plaintiff testified that she was unable to maintain employment as a cashier during the critical period because she was too slow and because the jobs were too complicated. (R. at 52-61). As the ALJ noted in his opinion, however, she was able to work as a cashier in the truck stop for 16-18 months, and only quit because her boss accused her of stealing. He also noted that Plaintiff had the ability to perform fairly complex work because "not only did she work as a cashier, but the latter job also involved keeping records or supplies in addition to helping customers; she also did cleaning and stocking." (R. at 22). She also testified that stiffness in her legs and knee pain would have prevented her from maintaining work during the critical period. (R. at 69). The ALJ, however, points out the fact that during the relevant time period she was able to cook, clean, do the dishes, dust, and drive. (R. at 22). The ALJ, therefore, gave sufficient reasons for not crediting Plaintiff's testimony regarding her ability to work.

### III. CONCLUSION

For the reasons set forth above, we vacate the Commissioner's decision and remand Plaintiff's disability claim for further evaluation consistent with this opinion.

                                       s/ Stanley R. Chesler
                                       Stanley R. Chesler, U.S.D.J.

Dated: September 26, 2006